No. 47,684

STATE OF KANSAS, *Appellant*, v. HENRY ROYAL, *Appellee*.

(535 P. 2d 413)

Opinion filed May 10, 1975.

*Margaret W. Jordan*, district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *J. J. B. Wigglesworth* and *David W. Hughes*, assistant district attorneys, were with her on the brief for the appellant.

*Hugh H. Kreamer*, of Breyfogle, Gardner, Martin, Davis and Kreamer, of Olathe, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This appeal is by the State of Kansas from a pre-trial order sustaining the defendant's motion for discharge. The motion was predicated on the state's delay in filing charges against the defendant, Henry Royal.

There is little, if any, dispute as to the facts. The state alleges that on two occasions, November 16 and November 19, 1973, the defendant possessed for sale and sold marijuana, a controlled substance. The two sales were allegedly made to an undercover agent, Bob Allen, who was connected at the time with the Johnson County sheriff's office.

A complaint was issued May 3, 1974, and the defendant surrendered himself on May 22, having learned the police were looking for him, and after conferring with his attorney. A preliminary hearing was commenced June 11 and completed July 1, at which time Mr. Royal was bound over to the district court for trial. Mr. Allen testified for the state at the hearing.

Prior to arraignment, the defendant filed his motion for discharge. An evidentiary hearing was held at which two witnesses appeared: the defendant and Detective Davies, the supervisor of the county drug unit. Bob Allen did not testify. The trial court made findings of fact and conclusions of law and determined that the defendant should be discharged.

From the evidence adduced at the pretrial hearing the trial court found that the defendant "does not remember having previously seen" Mr. Allen prior to the time he testified at the preliminary hearing; that Allen had reported the alleged sale of marijuana on November 26; that Detective Davies could have arrested defendant for the offenses on the dates they allegedly occurred but intentionally and deliberately elected not to do so; that Davies' memory was not as good now as it was on November 16, that he hadn't the slightest idea of what he did on that date unless he would refer to his notes, and he did not remember when he turned the information over to the district attorney's office; and that Davies had on many occasions in the past made arrests on seeing crimes committed, such as sales of marijuana, without a chemical analysis.

Other pertinent portions of the court's opinion are as follows:

"The court determines as a matter of law that a police officer, upon learning that a felony has been committed, has a duty to take steps necessary to effect the arrest of the felon, without unnecessary delay.

.    .    .    .    .    .    .    .    .    .    .

"The court determines as a matter of law that in accordance with the holding in the case of Ross against the United States, 349 Fed. 2d 210, decided in 1965, and the case of People against Hernandez, 166 N. W. 2d 281, decided in 1969, and other cases of similar import, that procedural due process requires a timely arrest in order to allow a defendant the use of his memory to determine the existence of res gestae witnesses and to prove his defense.

"The court further determines as a matter of law that in the absence of an affirmative and convincing explanation of a delay in making an arrest where the defendant is prejudiced in making a defense, it must be presumed that due process is violated.

"The court further determines that delay in making an arrest in a narcotic case can only be tolerated and not be the basis for a finding of lack of due process when, 1, the delay is explainable, and by explainable the court is interpreting that term to mean justifiable; 2. When it is not deliberate; and 3, when no undue prejudice attaches to the defendant.

"In this case the court determines that the delay in making the arrest is not justifiable, that it is deliberate and intentional, and that prejudice attaches to the defendant by reason of the delay."

The state lists six points of error in challenging the court's decision. In a general way it may be said they refer to the pretrial nature of the hearing, to certain findings of the court and to the legal basis on which the court concluded that due process had been violated.

Although this court has had no occasion to consider the effect of delays occurring prior to the filing of formal charges, the question is not exactly new or novel. It has cropped up a good many times in other jurisdictions, especially in the courts of the federal judicial hierarchy. As we read the various cases dealing with the subject they tend to divide generally along three lines.

First, there is authority that a delay occurring between the time of an offense on the one hand, and the indictment or filing of a complaint on the other, is controlled by the applicable statute of limitations, not by the guarantees of speedy trial written in the Sixth Amendment. (*United States v. Judice,* 457 F. 2d 414 [5th Cir.]; *United States v. Harris,* 412 F. 2d 471 [6th Cir.]; *Lothridge v. United States,* 441 F. 2d 919 [6th Cir.].)

In *Nickens v. United States,* 323 F. 2d 808, the court spoke in this wise:

"Appellant's claim relating to the delay between the date of the offense and the commencement of criminal prosecution is not covered . . . by the Sixth Amendment, but rather it relates to the running of the applicable statute of limitations. (Citing cases.)" (p. 809.)

It is only fair to say at this point, however, that the state "does not take the extreme position that [it is] restrained only by the statute of limitations."

A second and less restrictive rule—and on which the trial court hung its hat—was applied in *Ross v. United States,* 349 F. 2d 210, and *People v. Hernandez,* 15 Mich. App. 141, 170 N. W. 2d 85. In

the *Ross* case the court observed that the record showed "(1) a purposeful delay of seven months between offense and arrest, (2) a plausible claim of inability to recall or reconstruct the events of the day of the offense, and (3) a trial in which the case against appellant consists of the recollection of one witness refreshed by a notebook." On the basis of that record the court held due process had been infringed. The court went on to say, however:

". . . Without attempting to define the precise reach of the Fifth Amendment in this context, a due regard for our supervisory responsibility for criminal proceedings in this jurisdiction requires in our view, the reversal of this conviction." (p. 216.)

Before leaving *Ross*, which was decided by a divided court, two to one, we should mention that the decision has generally been regarded as being based primarily on "an exercise of [its] supervisory power." (*Powell v. United States*, 352 F. 2d 705.) In *United States v. Sanchez*, 361 F. 2d 824, the second circuit Court of Appeals said *Ross* "grew out of the court's concern over a pattern of cases and its desire to carry out its function of 'supervisory responsibility for criminal proceedings' involving the District of Columbia Metropolitan police force." The same view is expressed in *Dancy v. United States*, 395 F. 2d 636, where the court stated:

". . . We regarded *Ross* more as a challenge to the police than as a license—a challenge to exhibit some awareness of the very real dangers of misidentification lurking in the narcotics undercover agent practice, and to endeavor consciously to devise methods and procedures which would reduce those dangers as much as possible consistent with effective law enforcement." (p. 638.)

The *Hernandez* case phrases the rule in somewhat different language. In ruling that procedural due process was lacking, the Michigan court spoke in these words:

". . . We recognize that a delay may not be unusual in narcotics and counterfeiting cases, in order to allow proper inquiry into the whereabouts and sources of the contraband; however, where *some* prejudice is shown, as it is shown in this case, it can be permitted and not be the basis for a finding of lack of due process only where the following elements are present and shown clearly and convincingly to the trier of fact: (1) when the delay is explainable, (2) when it is not deliberate, (3) where no *undue* prejudice attaches to the defendant." (p. 147.)

On a factual basis *Hernandez* is readily distinguishable from the case at hand. There, the defendant was referred to as "an uneducated, illiterate man who neither reads nor writes the English language"—quite a different type of individual than a high school

graduate such as Royal, with two courses taken at a junior college. Moreover, the alleged sale was not to the undercover agent but to a known narcotics dealer whom the agent had recruited, and who purportedly paid defendant $250 in marked money which was not recovered upon his arrest some forty-two days later.

A third approach is mirrored in *United States v. Marion*, 404 U. S. 307, 30 L. Ed. 2d 468, 92 S. Ct. 455, where the federal Supreme Court recognized a relationship existing outside of the Sixth Amendment between the requirements of due process and inordinate pre-accusation delay. The *Marion* case rests on the proposition that due process rights may be said to have been denied by reason of pre-accusation delay, where it is shown that actual prejudice resulted to the defendant in his ability to conduct his defense and that the government intentionally delayed prosecution to gain a tactical advantage over him. This rationale finds expression, albeit somewhat obliquely, in the following language in the opinion:

". . . [I]t is appropriate to note here that the statute of limitations does not fully define the appellees' rights with respect to the events occurring prior to indictment. Thus, the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. . . ." (p. 324.)

It seems worthy of mention that the court had this to say in regard to the element of prejudice:

". . . Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment. Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature." (pp. 325, 326.)

See, also, *People v. Allen*, 38 Ill. 2d 26, 230 N. E. 2d 170; *People v. Alvarado*, 258 C. A. 2d 756, 66 Cal. Rptr. 41.

*Marion* has been followed, not surprisingly, by two recent cases from the tenth federal circuit, *United States v. Beitscher*, 467 F. 2d 269, and *United States v. Tager*, 481 F. 2d 97. We quote from the latter case:

"Complaint is also made that the 18-month delay between the date of the commission of the offense and the presentation of the evidence to the grand jury was a prejudicial delay. In *United States v. Beitscher*, 467 F. 2d 269,

272 (10th Cir. 1972), we held 'the rights of a defendant under the due process clause of the Fifth Amendment are not violated in the absence of a showing of actual prejudice resulting from the pre-indictment delay and that the delay was purposefully designed to gain tactical advantage or to harass the defendants.' We do not believe either of these elements was present in this case." (p. 100.)

We consider the views expressed in the *Marion, Beitscher* and *Tager* cases to be the better reasoned and more judicious approach to follow in dealing with due process problems stemming from pre-accusation delay. Under the rule laid down in those cases two questions must be considered in testing whether there has been an impermissible encroachment on due process rights: (1) Has the delay prejudiced the accused in his ability to defend himself, and (2) was the delay a tactical device to gain advantage over him? Affirmative answers to both questions need be supplied before it may be said that criminal charges should be dismissed.

In answering the second part of the equation the trial court must determine the reason underlying the delay—the purpose of the state, and its intent in delaying the filing of formal charges. It is not enough, under what we may refer to as the *Marion* rule, that delay be deliberate and intentional; the end to be achieved must be looked into. Was the delay necessary to effective enforcement of the law? Could it have been avoided? Or was the delay simply a device to harass and place the defendant at a disadvantage?

In a Note on The Right to a Speedy Trial, appearing in 20 Stanford Law Review 476, the author makes this observation:

"As a general rule, the government should be required to initiate the criminal process as soon as it has decided to prosecute an individual and has sufficient evidence to secure an indictment. An exception to this general rule might be created for those instances in which the police are conducting an undercover investigation, a practice common in narcotics cases. The police might be justified in maintaining the effectiveness of an undercover agent by delaying the arrest of one individual while the agent gathers information on others. However, such a delay would have to be balanced against the interest of the defendant in being informed of the charges against him." (p. 500.)

Several arguments are advanced by the state in opposition to the trial court's ultimate conclusions. Two of them have already been answered, *i. e.*, that the trial court erred in adopting the rule set out in *Ross v. United States,* supra, rather than that found in *United States v. Tager,* supra. We have agreed the latter is the better rule and should be followed and applied in this jurisdiction.

Applying the rule in *Marion* and *Tager* the state maintains that

while its delay in filing the complaint against Royal was intentional, it occurred, not to harass or take advantage of Mr. Royal, but as a procedure necessary to root out and eliminate the illegal drug traffic in Johnson County. The evidence was undisputed to that effect, we might say, and the trial court erred in using the *Ross-Hernandez* yardstick.

The state takes issue with the trial court's determination that an officer "on learning that a felony has been committed, has a duty to take steps necessary to effect the arrest of the felon without unnecessary delay." If it be the sense of this conclusion that an officer, on learning of an offense, must immediately arrest the suspect, we think the court went too far. In *United States v. Deloney*, 389 F. 2d 324, the court considered this question and spoke as follows:

"It is apparent that some pre-indictment delay usually is necessary to the effective prosecution of certain crimes such as counterfeiting or narcotic offenses. In such cases there is a great necessity, in the public interest, to use undercover agents and informers in order to reach the source of the contraband. Some delay is inevitable." (pp. 325, 326.)

The state further argues the court should have deferred its ruling on defendant's motion until after trial of the case. The record discloses no objection by the state to hearing the motion as a pretrial matter. Thus the point is not properly before us for determination. Alleged errors will not be considered on appeal unless objected to at the proper time. (*Brown v. App*, 1 Kan. 582 [2d Ed.]; *Brown v. Oil Co.*, 114 Kan. 482, 218 Pac. 998; *McGaughey v. Haines*, 189 Kan. 453, 370 P. 2d 120.)

Near the bottom of the barrel of the state's complaints, error is charged in the court's having found as a fact, and without corroborating evidence, that defendant did not remember seeing Allen before the preliminary hearing. We find no merit in this contention. The trial court was the finder of the facts and entitled to judge the worth and reliability of defendant's testimony in such respect. Whether the defendant's bare assertion that he did not remember was sufficient to support a finding of prejudice is not before us.

For reasons set out in the opinion this case must be reversed with directions to set aside the order of dismissal and proceed with the trial in accordance with the views expressed herein.

It is so ordered.

FROMME, J., not participating.