(57 P.3d 21)

No. 87,527

STATE OF KANSAS, *Appellant*, v. PATRICK CLOPTON, *Appellee*.

—

Opinion filed November 1, 2002.

*Tony Cruz*, assistant county attorney, and *Carla J. Stovall*, attorney general, for the appellant.

*Sandra Carr*, assistant appellate defender, and *Steven R. Zinn*, deputy appellate defender, for the appellee.

Before RULON, C.J., PIERRON, J., and STEPHEN D. HILL, District Judge, assigned.

PIERRON, J.: The State appeals the district court's dismissal of its case against Patrick Clopton. The court granted Clopton's motion to dismiss after holding that the State's delay in prosecuting the case violated Clopton's constitutional rights to due process. We affirm.

The facts are for, the most part, not disputed. On November 5, 1999, Junction City police officers executed a search warrant at a residence. Inside, the officers found Clopton and Trameika Moore asleep in the same bed. Officers found various drug items and paraphernalia. Clopton and Moore were arrested and charged with possession of cocaine with intent to sell within 1000 feet of a school, possession of marijuana, possession of drug paraphernalia, criminal acquisition of drug proceeds, and no drug tax stamp. Clopton

posted a $25,000 surety bond. In February 2000, Clopton appeared for arraignment and pled not guilty. The district court set the matter for pretrial conference on March 13, 2000, and for trial on March 31, 2000.

Over the next months, the dates for the pretrial motion hearing and trial were continued many times. The State requested the last continuance and the district court set the suppression hearing for May 24, 2000. On May 24, 2000, the State indicated it had issued subpoenas on May 9, 2000, to two officers who did not appear at the hearing because they were in training in Wichita. The State also announced that KBI lab testing was not completed; thus, it had no forensic analysis of the suspected controlled substances. Consequently, the State dismissed the case without prejudice. The State does not contest the fact that the lab results were completed shortly thereafter on May 31, 2000.

It was not until January 5, 2001, that the State refiled the original charges against Clopton, including an additional count of possession of drug paraphernalia. The district court conducted the preliminary hearing on March 8, 2001, and bound Clopton over for arraignment and trial on all charges. At arraignment, Clopton stood mute as to the charges, and the court entered pleas of not guilty on his behalf. The court set the jury trial for May 30, 2001. Because of additional continuances, the trial was set for July 12, 2001.

On June 25, 2001, Clopton filed a motion to suppress and a motion to dismiss. He alleged the State's action of dismissing and then refiling the same charges was both a violation of his constitutional right to a speedy trial and his rights under the Due Process Clause of the United States Constitution. The court granted the motion to dismiss based on Clopton's due process claim. The court ruled:

"[The] Court will find that the . . . State has . . . failed to convince the Court that it . . . dismissed . . . the first case, for any other reason but to gain a tactical advantage over the defendant. [The] dismissal, and subsequential refiling, resulted in . . . prejudice to the defendant in that he had to post additional bonds, that he has lost witnesses . . . which will . . . seriously impede his ability [to] defend this case. And that as such, his . . . due process rights have been violated under the Constitution of the United States of America. Will dismiss the case."

Clopton correctly points out that the State does not address the basis for the district court's granting of the motion to dismiss. Contrary to the State's brief, the trial court did not grant Clopton's motion based on a violation of his constitutional or statutory right to a speedy trial. Rather, the court specifically found the State violated Clopton's due process rights. The State's examination of the four-part test for violations of the constitutional right to a speedy trial found in *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), is for the most part irrelevant. However, the State's discussion of the prejudice prong of the *Barker* test applies equally in a discussion of a due process violation.

The United States Supreme Court in *United States v. Marion*, 404 U.S. 307, 320, 30 L. Ed. 2d 468, 92 S. Ct. 455 (1971), recognized that a relationship existed outside the Sixth Amendment to the United States Constitution between the requirements of due process and inordinate preaccusation delay. The Kansas Supreme Court, in *State v. Royal*, 217 Kan. 197, 201, 535 P.2d 413 (1975), explained:

"The *Marion* case rests on the proposition that due process rights may be said to have been denied by reason of preaccusation delay, where it is shown that actual prejudice resulted to the defendant in his ability to conduct his defense and that the government intentionally delayed prosecution to gain a tactical advantage over him."

The *Royal* court crafted its test in the language of the *Marion* decision by adopting the following: "The rights of a defendant under the due process clause of the Fifth Amendment are not violated by pre-accusation delay in the absence of a showing that actual prejudice resulted from the delay and that the delay was intentionally designed to gain tactical advantage over the defendant or to harass him." 217 Kan. 197, Syl. ¶ 2. See also *United States v. Lovasco*, 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977).

In the case at bar, the district court held that Clopton had met both prongs of the *Royal* test. The court found the State had failed to demonstrate that it dismissed the first case against Clopton for any other reason but to gain a tactical advantage. The court also found the State's actions prejudiced Clopton in that he had to post additional bonds and lost a witness which seriously impeded his

ability to defend his case. The court concluded that Clopton's due process rights under the United States Constitution had been violated.

We review this case to determine whether the district court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *Sampson v. Sampson*, 267 Kan. 175, 181, 975 P.2d 1211 (1999). An appellate court's review of conclusions of law is unlimited. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689-90, 984 P.2d 719 (1999).

The district court's findings under the second prong in *Royal* are supported by substantial competent evidence. There is no doubt the State dismissed its case against Clopton for tactical reasons. Two of the police officers involved in the case were unable to attend the hearing on May 24, 2000, and in all likelihood the court probably would have granted Clopton's motion to suppress without the officers ' testimony. Also, it is undisputed the State did not have the results from the KBI forensic testing of the alleged drug substances discovered during the search. On May 31, 2000, 7 days after the State dismissed its case against Clopton, the KBI completed its testing, yet the State waited 7 months to refile charges against Clopton. The court found it was this delay and refiling that prejudiced Clopton.

Clopton presented evidence demonstrating actual prejudice in the State's dismissal of his case and the 7-month delay in refiling. First, Clopton was required to post an additional bond after the refiling of the case. Second, his defense was hampered by the loss of a key witness. The State does not contest that Moore, Clopton's girlfriend and codefendant, had pled guilty to a severity level 3 drug felony under the facts in this case and had been granted probation and allowed to move to Texas. Clopton presented evidence that by the time this case came before the court again, Moore's whereabouts were unknown and there was a warrant for her arrest. Clopton was unable to call Moore as a witness in his trial. Apparently, she was going to exonerate Clopton.

We find the district court's findings of fact under the two-part *Royal* test are supported by substantial competent evidence and are sufficient to support the finding of a due process violation.

Affirmed.