(145 P.3d 931)
Nos. 92,114
92,883

STATE OF KANSAS, *Appellee/Cross-appellant*, v. TODD EUGENE CLEMENCE, *Appellant/Cross-appellee*.

 Opinion filed November 9, 2006. 

*Patrick H. Dunn,* of Kansas Appellate Defender Office, for appellant.

*Daryl E. Hawkins,* assistant county attorney, and *Phill Kline,* attorney general, for appellee.

Before RULON, C.J., GREENE and HILL, JJ.

GREENE, J.: Todd Eugene Clemence appeals his convictions for the manufacture of methamphetamine, possession of methamphetamine with intent to sell, felony possession of drug paraphernalia, possession of methamphetamine without a drug tax stamp, and misdemeanor possession of drug paraphernalia, arguing numerous trial and sentencing errors together with a claim that his speedy trial rights were violated. We agree with Clemence as to his speedy trial argument, and we therefore reverse his convictions and order that he be discharged.

*Factual and Procedural Background*

The rather tortured path from Clemence's arrest in November 2001, to his arraignment in September 4, 2002, and ultimately to his jury trial in mid-December 2003 is remarkable for a host of delays, most notably the State's dismissal and refiling of charges found by the district court to not be of necessity. We set forth the timing and details of these proceedings only because of their importance to our speedy trial analysis.

Based upon an odd combination of materials purchased by Clemence at a hardware store, the store clerk informed police, who procured a search warrant for Clemence's residence. When the search revealed a host of methamphetamine manufacturing materials, Clemence was arrested November 15, 2001, and was charged on November 27, 2001, with manufacturing or attempt to manufacture methamphetamine, possession of methamphetamine with intent to distribute, felony possession of paraphernalia, and possession of methamphetamine without a drug tax stamp. Ar-

raignment on these charges was held September 4, 2002, and trial was set for October 10, 2002.

On September 19, 2002, the State filed an amended complaint separating the offenses of manufacture of methamphetamine and attempt to manufacture methamphetamine. A new preliminary hearing was requested and set for October 1, but in lieu of this hearing, the court heard Clemence's counsel's motion to withdraw and charged the time lost to Clemence. The trial date of October 10, 2002, was continued. Clemence's efforts to procure counsel terminated October 22, 2002, when new counsel made an appearance at a status conference.

On December 9, 2002, the State moved for and the court granted a continuance of second preliminary hearing until January 10, 2003. On the day before this hearing, the State moved for yet another continuance, which was granted. Ultimately, the second preliminary hearing was conducted February 21, 2003.

On March 5, 2003, a second arraignment for Case No. 01CR395 occurred based on the amended complaint the State filed separating the crimes of manufacture of methamphetamine and attempt to manufacture methamphetamine. The State addressed the speedy trial issue on the record, stating, "As far as speedy trial goes, Your Honor, the State would like to (unintelligible) abundance of caution . . . assume that an appellate court would find that his first arraignment . . . was when a speedy trial began." Defense counsel agreed. Clemence waived the formal arraignment and stood mute; the court entered pleas of not guilty on his behalf. The court attempted to schedule the trial for April 16, 17, and 18, 2003. Defense counsel had a conflict on April 17, but the opening trial day was scheduled for April 16, 2003.

On March 31, 2003, however, Clemence filed a motion to continue for numerous reasons including the need to prepare for trial. A motions hearing was held on April 2, 2003, in which the State objected to the continuance of the jury trial. The court granted the motion to continue. Time was assessed to the defendant. The court noted April 18, 2003, as the "drop-dead date, as far as speedy-trial issues go." The State did not concede that date, however. The court then exercised its 30-day time period and set trial for May 13, 14,

and 15, 2003. See K.S.A. 22-3402(3)(d). On April 10, 2003, Clemence's bond was revoked for failure to comply with the conditions of the bond.

On April 25, 2003, Clemence filed a motion to disqualify the Dickinson County Attorney's office due to the prosecuting attorney having married the attorney who represented Clemence at the first preliminary hearing and the first arraignment. The court denied this motion at an April 24, 2003, hearing. At yet another motions hearing on April 30, 2003, the trial was still set for May 13, 2003.

On May 8, 2003, at a scheduled motions hearing, the State for the first time notified defense and the district court of its intention to dismiss Case No. 01CR395 and refile charges. The motive for the State's actions focused on the charge of attempt to manufacture methamphetamine. The court dismissed the case and set May 12, 2003, for another motions hearing.

On May 12, 2003, Case No. 01CR395 was dismissed and the State filed a complaint for Case No. 03CR134, which charged Clemence with (1) unlawful manufacture of methamphetamine, which was found in his residence, (2) unlawful manufacture of methamphetamine found in an outbuilding, (3) possession of ephedrine, (4) possession of methamphetamine with intent to sell, deliver, or distribute, (5) felony possession of drug paraphernalia, (6) possession of methamphetamine, (7) felony possession of anhydrous ammonia in an unapproved container, (8) possession of methamphetamine without a drug tax stamp, and (9) misdemeanor possession of drug paraphernalia.

At the May 12, 2003, motions hearing, Clemence argued a violation of his constitutional rights regarding the protracted process and requested the case either proceed to trial or the court dismiss the case with prejudice. The district court reiterated the decision to dismiss Case No. 01CR395 and after discussing Clemence's bond, scheduled another preliminary hearing for May 22, 2003.

The next hearing documented in the record occurred on August 18, 2003, in which his bond was again discussed, together with recommended drug treatment. Clemence then waived a formal arraignment, stood mute to the nine charges under Case No.

03CR134, and the court entered not guilty pleas on his behalf. Trial was set for October 22, 23, 24, 2003.

On September 23, 2003, Clemence filed a motion to dismiss for violation of his speedy trial rights. Prior to the hearing on this motion, however, on September 30, 2003, the court held a motions hearing in which the State chose not to charge Clemence with the possession of ephedrine and anhydrous ammonia. Additionally, the court heard motions filed by the State to admit evidence pursuant to K.S.A. 60-455, a motion in limine, and a motion to cease harassment of the State's witness, among others. At this hearing, an informant testified that she was acquainted with Clemence and that she had observed his previous involvement in methamphetamine manufacturing. Notably, however, the witness repeatedly stated that it had just been too long since events had occurred for a clear recollection of events, including the conversations she had with law enforcement. The district court ordered the State to file another K.S.A. 60-455 motion because the State's motion was not specific enough in providing exactly what evidence it planned on admitting.

The court also stated at the close of this hearing, as related to Clemence's motion for continuance:

"The State has filed motions for reciprocal discovery; objections to continuance; response to defendant's motion to dismiss; motion to revoke bond; bill of particulars; motion to cease harassment of a confidential informant; motion pursuant to 60-455; motion in limine, in regards to the—Detective Demars, the reckless—what this Court found as reckless disregard for the truth; and a motion in limine on Mr. Ladner.

"There have been a number of motions, and the Court believes that had those motions been able to be heard timely, on September 17th, that this matter could have gone to trial. And [this] Court finds that the request of the defendant's counsel that she has not had adequate time to prepare for trial because of the fact that the transcripts were not made available until last week, I'm going to grant that motion, based upon her statements in the motion to continue that she has not had enough time for trial preparation.

"In that motion to continue, the counsel acknowledges it—this time will run towards the defendant. It is the defendant's motion, and the Court is granting the motion to continue, as set forth in that motion, and the time will run to the defendant."

The trial was set for December 9, 10, and 11, 2003. Another 60-455 hearing was set for October 17, 2003.

The hearing on Clemence's motion for dismissal based on violation of his speedy trial rights was held on September 24, 2003. The timeline as forth above was reviewed by defense counsel. The court found that the State was responsible for 178 days and stated its other findings included:

"One, the State of Kansas did not dismiss this case out of necessity. There is absolutely no showing on the part of the State of Kansas that these matters were dismissed with necessity. There's no showing that there were witnesses not available. There's no showing that this couldn't have been done back in October of 2002.

"Therefore, the Court will find that the State of Kansas, when it moved to dismiss this matter, it moved to dismiss the matter to gain a tactical advantage. Therefore, the times in this case as to three charges would be tacked on. It's moot, folks, inasmuch as under the statutory theory we're dealing with 178 days, which is within the period of time of the 180 days."

The district court then reviewed the constitutional speedy trial criteria and concluded that while the State proceeded as it did to gain a tactical advantage, it did not prejudice the defendant. Clemence's motion for dismissal for speedy trial violations was denied.

On September 26, 2003, the State filed an amended complaint for Case No. 03CR134, which charged Clemence with (1) unlawful manufacture of methamphetamine, (2) unlawful manufacture of methamphetamine "located in an outbuilding," (3) possession of methamphetamine with the intent to sell or distribute, (4) felony possession of drug paraphernalia, (5) possession of methamphetamine, (6) possession of methamphetamine without a drug tax stamp, and (7) misdemeanor possession of drug paraphernalia.

On October 17, 2003, the second 60-455 hearing was held in which the State argued it wanted to have the informant's testimony admitted for the purposes of showing Clemence's intent because Clemence was claiming absence of knowledge or mistake of fact. The court ruled that the informant's testimony could be used because her testimony regarding Clemence previously loading equipment and supplies used in manufacturing could show plan and "does go to knowledge and intent." The court denied the State's motion to allow other evidence of a "cook" into evidence.

The trial was held on December 9, 10, 11, and 15, 2003. The jury found Clemence guilty of unlawful manufacture of methamphetamine; possession of methamphetamine found in the oven with intent to sell, deliver, or distribute; possession of methamphetamine found in the cooler in the kitchen with intent to sell, deliver, or distribute; possession of methamphetamine found in the cooler in the outbuilding with the intent to sell, deliver, or distribute, felony possession of drug paraphernalia, possession of methamphetamine without a drug tax stamp, and misdemeanor possession of drug paraphernalia. The court sentenced Clemence to 81 months' imprisonment. Clemence timely appeals. The State appeals the district court's decision at sentencing to categorize the conviction of manufacturing of methamphetamine as a severity level 3 drug felony. The two appeals were consolidated.

*Standard of Review*

We exercise unlimited review of a claim that a defendant's statutory or constitutional speedy trial rights were violated. See *State v. Rivera*, 277 Kan. 109, 113, 83 P.3d 169 (2004).

*Were Clemence's Statutory or Constitutional Speedy Trial Rights Violated?*

Under the speedy trial statute, K.S.A. 22-3402(1), a defendant held in custody solely by reason of a criminal charge must be brought to trial "within ninety (90) days after such person's arraignment on the charge . . . unless the delay shall happen as a result of the application or fault of the defendant." The statute also provides a 180-day limitation for persons charged with a crime but "held to answer on an appearance bond." K.S.A. 22-3402(2).

In addition to the statutory violations alleged by Clemence, he also argues his constitutional speedy trial rights were violated. See *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972) (providing the four-part test for violations of the constitutional right to a speedy trial). " 'The constitutional protection of a speedy trial attaches when one becomes accused and the criminal prosecution begins, usually by either an indictment, an information, or an arrest, whichever first occurs.' [Citations omitted.]"

*Rivera,* 277 Kan. at 112. A defendant's right to speedy prosecution of criminal charges is based both in the Sixth Amendment and the Fifth Amendment to the United States Constitution, as discussed below.

We analyze both the statutory claim and the constitutional claims and conclude that Clemence's rights were violated under either analyses.

*Statutory Speedy Trial Analysis*

At the outset of our statutory analysis we note that the parties and the district court agree that in counting time for purposes of the speedy trial statute, both the original case and the refiled case must be considered as a singular calculation, at least as to charges that were common to both cases. This conclusion is consistent with *State v. Cuezze, Houston & Faltico,* 225 Kan. 274, 278, 589 P.2d 626, *modified* 225 Kan. 468, 595 P.2d 723 (1979), where our Supreme Court held that "[a]bsent a showing of necessity, the State cannot dismiss a criminal action and then refile the identical charges against the same defendant and avoid the time limitations mandated by the statute [K.S.A. 22-3402]." See also *State v. Clovis,* 254 Kan. 168, 173, 864 P.2d 687 (1993) (180 days continues to run on counts from the first filed case in order that purpose of statute not defeated). Here, because of the district court's finding of no necessity for the dismissal and refiling of the second case, the elapsed time over both cases must be aggregated.

Analyzing the chronology set forth above, we count the elapsed time that should be charged to the State as follows:

Arraignment September 4, 2002, until October 1 defense continuance of preliminary hearing = 27 days charged to State.

State motion to continue preliminary hearing filed December 9, 2002, until April 1, 2003, defense motion for continuance = 113 days charged to State. (Arguably, an additional 15 days could be charged to the State based upon the speedy trial reasoning expressed in the dissent in *State v. Brown,* 34 Kan. App. 2d 746, 772-75,124 P.3d 1035 (2005) *rev. granted* 281 Kan. ___ [May 10, 2006]).

State notification to court (and court's grant of State's oral application to dismiss) on May 8, 2003, of intent to dismiss until May 22, 2003, defense motion to continue preliminary hearing = 15 days charged to State.

Preliminary hearing July 11, 2003, until August 30, 2003, defense motion to continue trial = 50 days charged to State.

Totalling this elapsed time results in 205 days charged to State, or 25 days beyond the statutory maximum of 180 days. This calculation renders moot the defendant's alternative argument that we should also count elapsed days while he was incarcerated, which he claims exceed the statutory maximum of 90 days by 41 days. It would seem that no matter how the elapsed time is counted for purpose of the statute, Clemence's statutory speedy trial rights were violated as to all charges common to both cases.

*Sixth Amendment Speedy Trial Analysis*

Our Supreme Court adopted the four-part *Barker* test for violations of the constitutional right to a speedy trial in *Rivera*, 277 Kan. at 113.

"To evaluate whether a defendant's Sixth Amendment right to speedy trial has been violated, Kansas applies the following four factors set out by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972): (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his or her right, and (4) prejudice to the defendant. None of these four factors, standing alone, is sufficient for finding a violation. Instead, the court must consider them together along with any other relevant circumstances. [Citation omitted.] ' "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." ' [Citations omitted.]" 277 Kan. at 113.

Applying this four-part test, we conclude that (1) the length of the delay (more than 2 years from arrest to trial) was presumptively prejudicial, especially considering the clear violation of the statutory period; (2) the reasons for the delay, although shared to some extent, were principally attributable to the State, for its motion practice and appeal of magistrate ruling, together with the inexplicable dismissal and refiling of charges; (3) Clemence timely asserted his right; and (4) Clemence was prejudiced by the delay.

As to our prejudice conclusion, we are mindful that the district court concluded otherwise, but we disagree for the following reasons: (1) The record is replete with statements from witnesses about how long ago the incidents occurred (especially Detective Demars); (2) Clemence had to argue bond amounts numerous times and was incarcerated during much of the elapsed time; (3) the dismissal and refiling was "done to gain a tactical advantage by the State"; (4) the defendant's discomfort, oppressive pretrial incarceration, anxiety, and concern must be considered prejudicial (see *State v. Fitch*, 249 Kan. 562, 566, 819 P.2d 1225 [1991]); (5) Clemence had employment, housing, and transportation problems resulting from the delay; (6) the delay enabled the State to convince Jacob Area to testify against Clemence, which the defense claims could not have been achieved until after the case was refiled.

Having applied the four-part *Barker* test, we conclude that Clemence's constitutional right to a speedy trial under the Sixth Amendment to the United States Constitution was violated.

*Fifth Amendment Pre-accusation Delay Analysis*

In addition to a defendant's right to a speedy trial under the Sixth Amendment, our Supreme Court has recognized that one has a due process right to a reasonably timely prosecution of criminal charges. See *State v. Royal*, 217 Kan. 197, 201-02, 535 P.2d 413 (1975); *State v. Clopton*, 30 Kan. App. 2d 1208, 1210-11, 57 P.3d 21 (2002). In reviewing allegations that this right has been violated, we employ a two-step analysis: (1) Has the delay prejudiced the accused's ability to defend himself or herself, and (2) was the delay a tactical device to gain advantage over the defendant? *Royal*, 217 Kan. at 202.

This analysis is easy to apply here, where the district court expressly found that the dismissal and refiling was to gain advantage of the defendant, and we have already concluded that Clemence was prejudiced from the delay. Accordingly, we conclude that Clemence's due process rights to a reasonably timely criminal prosecution were denied under these circumstances.

In summary, we conclude that Clemence was denied his statutory and constitutional rights to a speedy trial, thus requiring that

his convictions be reversed. The responsibility of seeing that an accused is given a speedy trial rests upon the prosecution, not the accused. *State v. Sanders*, 209 Kan. 231, 234, 495 P.2d 1023 (1972). The better practice dictates that the district court keep close tabs on this issue as the proceedings run their course; where the State dismisses and refiles criminal charges to gain tactical advantage, prejudicial delay must not be allowed. Clemence's convictions are reversed, and this case is remanded with directions to discharge the defendant.

Reversed and remanded with directions.