(65 P.3d 1048)
No. 87,609
88,698

STATE OF KANSAS, *Appellee*, v. CHARLES M. PRATER, *Appellant.*

Opinion filed April 4, 2003.

*Sandra Carr*, assistant appellate defender, for appellant.

*Daryl E. Hawkins*, assistant county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BEIER, P.J., WAHL, S.J., and PADDOCK, S.J.

WAHL, J.: The issues of this case arise from the unusual interplay between two cases in which Charles Prater was the defendant. The facts leading to his conviction in either case do not weigh very heavily in the determination of this appeal.

In 1997 Prater was convicted by a jury of aggravated arson and assault on a law enforcement officer. His presentence investigation (PSI) report showed a criminal history score of B. Prater objected,

arguing that he was uncounseled on three of his five previous person misdemeanor convictions; hence, they were not eligible for aggregation to a person felony. The State then stipulated to a criminal history score of C and Prater was granted a downward departure sentence of 36 months.

Prater appealed and a panel of this court, citing lack of evidence, reversed his aggravated arson conviction and remanded to the district court with orders to enter a new conviction for attempted aggravated arson. *State v. Prater*, No. 81,710 unpublished opinion filed November 19, 1999.

The mandate was issued on February 16, 2000, and was received by the clerk of the court in Dickinson County on February 18, 2000. No action was taken to resentence Prater until he was involved in another incident with the police later that year.

On December 18, 2000, Prater entered a plea of nolo contendere and was found guilty of two counts of aggravated assault on a law enforcement officer, one count of reckless driving, and one count of misdemeanor DUI.

Prater's PSI report was filed on February 20, 2001, assigning a criminal history score of A. His 1997 convictions were included in his criminal history score.

Prater immediately moved to withdraw his nolo contendere plea in the 2000 offenses. He also moved for dispositional and durational departures. At a hearing on both motions, Prater's attorney explained to the court that Prater had not been notified of the decision of the Court of Appeals regarding his 1997 convictions and did not realize the convictions for the 1997 offenses would be used against him in his criminal history score. The judge dismissed his argument and ruled that even if Prater had not known the status of his previous appeal, that fact would not be enough to merit the withdrawal of his plea.

On February 28, 2001, the State filed a motion to enter a new judgment of conviction and resentencing for Prater's 1997 offenses.

Prater's sentencing for the 2000 offenses was held on March 14, 2001. The court rejected Prater's request for durational and dispositional departures and sentenced him to 43 months in prison.

Prater argued that several of his older misdemeanor convictions should not have been included in his PSI report because the State had stipulated to excluding them at the original sentencing for his 1997 offenses. The argument was rejected by the court. Three of Prater's five previous person misdemeanors were converted into a person felony, elevating his criminal history score. The judge ordered the revision of Prater's PSI report to reflect the Court of Appeals' reversal of his aggravated arson conviction. Although the district court had not entered a new conviction against Prater for the 1997 attempted aggravated arson, it was inserted into his PSI report and used to compute his criminal history score of A. Prater appealed his conviction and sentence for the 2000 offenses to this court.

The district court entered a new judgment against Prater for attempted aggravated arson for the 1997 offense on May 17, 2001. Prater's PSI report included a criminal history score of A.

Prater objected to his assigned criminal history score and argued successfully for removal of several of his prior convictions from his PSI report. Despite the removal of those previous convictions, Prater's criminal history score remained an A because the convictions stemming from the 2000 offenses were included. When Prater was resentenced for the 1997 offense, he was again given a downward durational departure.

Prater appealed his conviction and sentence for the 1997 offense. The cases resulting from the 1997 offense and the 2000 offense were consolidated for appeal.

Prater argues his due process rights were violated by the delayed resentencing after his 1997 conviction was reversed on appeal. The mandate issued by the clerk of the appellate courts was received by the district court on February 18, 2000. The district court's appearance docket indicates the resentencing was to have been scheduled on the next criminal docket and that "notice of setting for sentencing/att. ag. arson hearing on 1/05/00 at 9:30 sent to all attorneys." No sentencing hearing was held and no further action was taken toward resentencing Prater until the State filed a motion to enter a new judgment and sentencing on February 28, 2001.

The Kansas Supreme Court examined the due process implications of pre-accusation delay in *State v. Royal*, 217 Kan. 197, 535 P.2d 413 (1975), which involved a 6-month delay between the alleged offense and the filing of the complaint against the defendant. The court adopted the test established in *United States v. Marion*, 404 U.S. 307, 30 L. Ed. 2d 468, 92 S. Ct. 455 (1971): "(1) Has the delay prejudiced the accused in his ability to defend himself, and (2) was the delay a tactical device to gain advantage over him? Affirmative answers to both questions need be supplied before it may be said that criminal charges should be dismissed." *Royal*, 217 Kan. at 202.

Here, the delay occurred after the case was remanded to the district court for sentencing on the charge of attempted aggravated arson. The due process implications of this type of post-appeal delay have not been analyzed by the Kansas courts. An analogous issue was considered in *State v. Todisco*, 129 N.M. 310, 6 P.3d 1032 (Ct. App. 2000).

In *Todisco*, the case was remanded by the New Mexico Court of Appeals to the district court for reanalysis on the issue of whether the defendant, a juvenile, was amenable to treatment and rehabilitation as a child in available juvenile facilities. A 9-month delay occurred between the Court of Appeals' decision and the consideration of the issue by the district court. By the time the amenability hearing was held, Todisco was 4 months short of being 21, at which age he could no longer be held in juvenile facilities. The district court determined Todisco was not amenable to treatment or rehabilitation as a child in available facilities, and Todisco was resentenced as an adult. The New Mexico Court of Appeals applied the *Marion* test to determine if the post-remand delay was a violation of Todisco's due process rights and determined there was no violation. *Todisco*, 6 P.3d at 1041.

Applying the *Marion* test, the first question is to determine whether Prater suffered prejudice by the delay in his resentencing after his case was remanded. The delay in resentencing resulted in a longer sentence for Prater. When originally sentenced for the 1997 offense, his criminal history was, by stipulation, scored as a C. Prater's resentencing occurred after the intervening conviction

for the 2000 offense which resulted in an increase in his criminal history score to A. If Prater had been sentenced promptly after the court clerk received the mandate, a lower criminal history score would have been used. Prater has demonstrated prejudice as a result of the State's delay in resentencing after remand.

As determined in *Marion*, both factors must be present in order to demonstrate a due process violation and Prater must show the State intentionally delayed sentencing to gain a tactical advantage over him.

The prosecutor inquired into the status of Prater's 1997 appeal after he was arrested for the 2000 offense. Once the State realized Prater had not been resentenced as ordered by the Court of Appeals, a motion for sentencing was filed in the district court. The prosecutor admitted that the outer limits had been stretched by the delay but urged there had been no bad faith on the part of the State.

Prater has failed to demonstrate the delay was an intentional ploy to gain a tactical advantage over him. *Royal* requires the presence of both factors in order to find a violation of due process. Prater's argument fails.

Prater next argues the court erred in including his 1997 offense in his criminal history score when he was sentenced for the 2000 offense. He was sentenced for the 2000 offense on March 14, 2001. The 1997 conviction for attempted aggravated arson was included in Prater's criminal history score, although he had not yet been convicted and resentenced on that charge by the district court after remand by the Court of Appeals. Prater argues the 1997 offense was not a "verified prior conviction" at sentencing.

This question requires that we interpret the Kansas Sentencing Guidelines Act (KSGA). Interpretation of the KSGA is a question of law and this court's scope of review is unlimited. *State v. Hodgden*, 29 Kan. App. 2d 36, 39, 25 P.3d 138 (2001).

K.S.A. 21-4710(d)(1) provides "[o]nly verified convictions will be considered and scored" when computing a defendant's criminal history for sentencing.

The question is whether the district court properly included attempted aggravated arson in Prater's criminal history score when

he had not yet been formally convicted of that charge by the district court after remand by the Court of Appeals. Did the mandate issued by the Court of Appeals ordering the district court to enter a conviction of attempted aggravated robbery have the effect of a verified conviction as required by the KSGA? There is a virtual absence of Kansas case law related to this issue.

Prater argues that during the period between the issuance of the mandate and the entry of conviction by the district court, his conviction in that case was void. He cites *State v. Osburn*, 216 Kan. 638, 641-42, 533 P.2d 1229 (1975), to support his argument. The *Osburn* court held that when an appellate court orders a new trial, the result is as if there had been no trial at all. However, those are not the facts of this case in that no new trial was ordered by the Court of Appeals. While Prater's aggravated arson conviction was set aside, the appellate court ordered the entry of a new conviction for attempted aggravated arson by the district court. *Osburn* offers no help in this situation.

In *State v. Macias*, 30 Kan. App. 2d 79, 39 P.3d 85 (2002), this court held that the district court had not erred when it included the appellant's participation in a diversion program from a foreign state in his criminal history score because Macias' guilt in that case had been demonstrated to the satisfaction of the foreign state's court and all that remained was a formal adjudication. According to the *Macias* court, '[i]t is a defendant's refusal to renounce criminal behavior that our sentencing guidelines seek to inhibit by taking all prior established criminal behavior into consideration." 30 Kan. App. 2d at 83.

In *State v. Bloomer*, 197 Kan. 668, 421 P.2d 58 (1996), *cert. denied* 387 U.S. 911 (1967), the appellant argued his mandate was not filed in the district court of the county from which the case originated; therefore, the district court of the county of his conviction was without authority to proceed with the retrial of his case. The court rejected this argument and held:

"This court's mandate was directed to and filed upon the records of the district court of Ellis county which was the trial court and the court from which the appeal was taken. Thus the mandate properly became a part of the judgment controlling

in the conduct of any further proceedings in the case. (K.S.A. 60-2106[c])."
*Bloomer*, 197 Kan. at 674.

Once the decision of an appellate court is final, the court is required by K.S.A. 60-2106(c) to transmit a copy of the mandate and opinion to the district court. The statute further states: "Such mandate and opinion, without further order of the judge, shall thereupon be a part of the judgment of the record if it is determinative of the action, or shall be controlling in the conduct of any further proceedings necessary in the district court."

Since the mandate became a part of the judgment of the district court, Prater's guilt had been demonstrated and all that remained was a formal conviction by the district court. The issuance of the mandate is sufficient to include the conviction for attempted aggravated arson in Prater's criminal history score.

Prater next argues that stipulating to a criminal history score in one case binds the State to that score in all subsequent cases against him. He contends, as a matter of law, the State was precluded by collateral estoppel from including five person misdemeanors in his criminal history score. We have unlimited review of questions of law. *State v. Kelly*, 262 Kan. 755, 766, 942 P.2d 579 (1997).

When Prater was sentenced for aggravated arson in the 1997 offense, he raised an objection to the inclusion of several person misdemeanors in his criminal history score because, he argued, they were uncounseled. No evidence was presented regarding those convictions. The State merely stipulated to a criminal history of C rather than B as had been calculated with the inclusion of the misdemeanors.

At the time of Prater's sentencing for the 2000 offense, the misdemeanors were again included in his criminal history score and Prater objected, arguing the State was bound by its previous stipulation. The State replied the stipulation had been "for the purposes of that proceeding only." The district court included the person misdemeanors, three of which were converted into a person felony, which resulted in a criminal history score of A.

Prater argues that the district court should have applied the doctrine of collateral estoppel to the question of prior misdemeanors

and the State should have been precluded from including them in his criminal history score.

The requirements of collateral estoppel are:

"(1)[A] prior judgment must have been entered on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment." *Kelly*, 262 Kan. at 767.

In *Kelly*, the Supreme Court held that collateral estoppel could apply to prior convictions if all the elements of collateral estoppel were met. 262 Kan. at 767.

Applying those factors to this case, Prater cannot show that a prior judgment was entered on the merits which determined the rights and liabilities of the parties based upon the ultimate facts as disclosed by the pleadings and judgment.

The State stipulated to a lower criminal history score rather than present evidence on the issue of whether the misdemeanor convictions had been counseled. This tactical decision by the State is not a judgment on the merits such that the application of collateral estoppel would be justified. No evidence was presented regarding the prior misdemeanor convictions. The only facts on the record are the district court's acceptance of the State's stipulation.

In *Kelly*, the court held that the presentation of a journal entry and oral testimony regarding a prior conviction was a prior judgment on the merits. 262 Kan. at 767-68. In this case there was no such presentation of evidence. A stipulation to a lower criminal history score by the State is not a prior judgment on the merits.

All of the requirements for collateral estoppel must be met before it can be applied. Prater has failed to meet the first requirement. His argument is without merit.

Prater's fourth argument is that the district court failed to resentence him within 180 days after the issuance of the mandate and, therefore, his conviction should be set aside. Prater did not raise this issue at sentencing before the district court. Issues not raised before the trial court cannot be raised on appeal. *State v. Crume*, 271 Kan. 87, 98, 22 P.3d 1057 (2001).

Prater contends the district court erred in refusing to allow him to withdraw his plea for the 2000 offense after he disclosed to the court that he had entered his plea without understanding the status of his appeal for the 1997 offense or its effect on his criminal history score. He argues his psychological difficulties, as evidenced by his prior competency evaluations, contributed to his misunderstanding concerning the effect of his appeal on his sentence.

K.S.A. 2002 Supp. 22-3210(d) provides "[a] plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged."

Our standard of review is whether the district court abused its discretion in refusing to allow the withdrawal of defendant's plea. The defendant bears the burden of showing such abuse. *State v. Bey*, 270 Kan. 544, 545-46, 17 P.3d 322 (2001). Judicial discretion is abused if judicial action is arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the trial court. *State v. Warden*, 257 Kan. 94, 116, 891 P.2d 1074 (1995).

The plea agreement formalized Prater's decision to plead guilty to two counts of aggravated assault on a law enforcement officer, one count of misdemeanor reckless driving, and one count of misdemeanor DUI. In return, the State agreed to drop all remaining charges against him. Neither Prater's potential criminal history score nor his possible sentence range were discussed in the plea agreement or the plea hearing.

At the plea hearing, the district judge questioned Prater, determined he had entered into the plea agreement "freely and voluntarily and with full knowledge and understanding," and accepted Prater's plea.

The PSI report assigned a criminal history score of A to Prater. Prater filed a motion to withdraw his plea because he had not been of sound mind when he entered into the agreement and he had not known the extent of his criminal history.

At the hearing on the motion to withdraw Prater's plea, his attorney argued Prater was unaware that his appeal had been decided and that he would be resentenced for the 1997 offense. Prater admitted he voluntarily entered into the plea agreement but that

he did not understand the effect of his prior appeal on his criminal history. The district judge ruled that even if Prater had not understood the status of his appeal, he did not consider that fact a valid reason to withdraw the plea.

At the time Prater entered into the plea agreement, he had been declared competent to stand trial by two different examinations. Although Prater was suffering from depression and anxiety about his case, he was found to be oriented to time, place, and person and capable of assisting in his own defense. Prater has presented no evidence or authority to this court in support of his contention that he lacked the mental capacity to enter into a plea agreement.

As for Prater's argument that he did not know the status of his appeal at the time he entered into the plea agreement and the impact of his prior offense on his criminal history, this court discussed a similar situation in *State v. Ford*, 23 Kan. App. 2d 248, 930 P.2d 1089 (1996), *rev. denied* 261 Kan. 1087 (1997).

In *Ford*, the defendant relied on information supplied by the prosecution that he had only one prior person felony on his record. Ford accepted the plea with the belief his crime and criminal history placed him in the presumptive probation grid block for sentencing. The PSI report, however, indicated Ford had two previous person felonies and a criminal history score of B.

Ford argued his plea was unintelligently made because he had relied on the representation of the prosecution as to his criminal history at that time. The Court of Appeals responded that "[t]here is no recourse for a plea unintelligently made." 23 Kan. App. 2d at 252.

Applying the analysis of *Ford*, Prater has no recourse for the fact that he failed to take into consideration the effect of his appeal on his criminal history score. Prater knew he had been convicted of aggravated arson and that his case had been appealed. That he did not inquire into the status of his own appeal does not demonstrate good cause to withdraw the plea such that the district judge abused his discretion in refusing to allow it.

Affirmed.