No. 122,002

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSE JESUS RODRIGUEZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

Generally, the interpretation of an appellate court mandate and whether the district court complied with it are questions of law subject to unlimited review.

2.

Courts have classified claims of post-remand procedural delays as a due process challenge and usually apply the four constitutional speedy trial factors from *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972): the length of delay, the reason for the delay, the defendant's assertion of his or her right, and prejudice to the defendant in deciding whether the defendant's due process rights have been violated.

3.

A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before the sentence is adjudged.

4.

In a presentence motion to withdraw plea, an appellate court reviews a district court's good-cause determination for an abuse of discretion. The person claiming an

1

abuse of discretion has the burden to establish the district court's decision was: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. The district court commits an error of fact when its findings are unsupported by substantial competent evidence.

5.

The mandate rule does not constitute an inflexible jurisdictional barrier to a party's ability to raise a new issue following a remand, but where a remand order is stated in specific terms following deliberate litigation choices by the parties, the parties are not free to endlessly expand on the issues the district court may consider in the absence of new, or newly discovered, facts.

Appeal from Seward District Court; CLINT B. PETERSON, judge. Opinion filed July 16, 2021. Affirmed.

*Kevin J. Zolotor*, of O'Hara & O'Hara LLC, of Wichita, for appellant.

*Russell Hasenbank*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., WARNER and HURST, JJ.

MALONE, J.: Jose Jesus Rodriguez brings this second appeal of the district court's decision denying his presentence motion to withdraw plea. Rodriguez pled no contest to abuse of a child committed in 2009, but he later filed presentence and postsentence motions to withdraw plea, all of which were denied. In the first appeal, this court affirmed the denial of Rodriguez' postsentence motions to withdraw plea, but we remanded for the district court to reconsider his presentence motion based on newly discovered evidence. *State v. Rodriguez*, No. 108,505, 2014 WL 1096553 (Kan. App. 2014) (unpublished opinion) (*Rodriguez I*).

By the time the mandate was issued, Rodriguez had completed his sentence and no action was taken to schedule a remand hearing for nearly four years. Rodriguez eventually moved to dismiss arguing that his constitutional due process rights had been violated because the district court did not conduct the remand hearing in a timely manner. The district court denied the motion to dismiss, held an evidentiary hearing on the presentence motion to withdraw plea, and once again denied the motion. Rodriguez appeals, arguing (1) the district court erred in denying his motion to dismiss and (2) the district court erred in denying his presentence motion to withdraw plea. Although we disagree with some of the district court's reasons for denying both motions, we find no reversible error and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The court in *Rodriguez I* summarized the facts and procedural history of the case:

"On November 25, 2009, the State charged Rodriguez with one count of abuse of a child under K.S.A. 21-3609, a severity level 5 person felony. It then amended the complaint to add two more counts of abuse of a child. As part of a plea agreement, the State filed a second amended complaint with just one count of abuse of a child in exchange for Rodriguez' plea of no contest to the charge.

"On January 26, 2010, the district court arraigned Rodriguez and engaged in a colloquy with him regarding his plea. The State then provided the court with a factual basis of the evidence that it would have presented had the case gone to trial. Specifically, the State believed the evidence would have shown that Rodriguez was babysitting his 4–month–old son, J.R., on November 23, 2009, when he sent a text message to the baby's mother [F.Q.] stating: "'[T]he baby is scaring me."' The State claimed the evidence would then show that

'[F.Q.] left work, and found the infant in his car seat, and with his eyes rolled up and he was unresponsive. The child began seizure activity shortly thereafter, and was subsequently taken from Southwest Medical Center to Wesley Medical Center in Wichita. He was examined there by

3

numerous physicians, including ones that diagnosed the child with bilateral retinal hemorrhages consistent with Shaken Baby Syndrome. And that it was a very strong probability of Shaken Baby Syndrome, not accidental infliction of those injuries. Those injuries would have been caused, according to medical testimony, by the intentional shaking and possible impact of J.R., date of birth . . . 2009. And that did result in great bodily harm to the child, including having bore holes drilled into the skull to alleviate the pressure caused by the bleeding in the brain.'

"Based on the factual basis given by the State, the court found Rodriguez guilty. The court then scheduled sentencing for March 10, 2010, at 10 a.m.

"On March 4, 2010, Rodriguez filed a presentence motion to withdraw his no-contest plea. In support of his motion, Rodriguez argued that good cause existed to withdraw the plea because new evidence had been discovered that might exonerate him. Rodriguez affirmed that 'he is not guilty of the charges filed against him and has a viable defense to said charges,' noting that the evidence upon which the charges were based was circumstantial and insufficient to form the basis of a conviction against him. Along with this motion, Rodriguez submitted an affidavit from [F.Q.] stating that she had remembered a coworker at her job had thrown J.R. in the air.

"The district court considered this motion when Rodriguez appeared for sentencing on March 10, 2010. [F.Q.] testified that she was Rodriguez' girlfriend but said she was no longer involved with Rodriguez. She said she remembered Detective Bethany Keating had asked her during the interrogation whether she could remember anyone throwing J.R. up in the air. [F.Q.] testified that she was so worried about her son at the time that she did not think about it and, therefore, told Detective Keating, '[N]o.' But she said she later remembered, however, that a coworker at her job had thrown J.R. in the air when he was around 2 or 3 months old, which was about a month or two before J.R. was hospitalized. [F.Q.] said the coworker threw J.R. pretty high more than once but did not drop him and she then asked the woman to stop doing it. She said her employer probably had the incident on videotape. [F.Q.] said after that incident J.R. slept a lot more than usual but did not vomit and did not refuse to eat. Unlike the later incident involving Rodriguez where J.R.'s eyes were rolling back in his head and it was very obvious to [F.Q.] that something was wrong, she did not notice any signs of anything being wrong with J.R. after the incident at work and did not seek any medical care for J.R. [F.Q.] said

4

when she contacted Detective Keating about what she had remembered, Detective Keating 'basically threw it off, like, it wasn't that for sure, it wasn't my [coworker] who had done this to him.'

"[F.Q.] also testified that on one occasion J.R. had fallen forward out of his car seat, which had been placed on a couch. She said he hit the front of his face on the carpeted floor but did not cry. She testified that she did not remember if J.R. acted any differently after that incident. [F.Q.] also testified that on another occasion Rodriguez tripped and fell as he walked while carrying J.R. in his car seat. She 'figured the baby probably whiplashed' as a result. She did not say when these incidents took place.

"The State called Detective Keating, who acknowledged that she spoke with [F.Q.] on March 1 or 2, 2010. She said [F.Q.] told her she had just remembered that a coworker had been throwing J.R. in the air when he was between 2 and 3 months old. [F.Q.] did not provide the name of the coworker. Detective Keating said she wrote down [F.Q.'s] information but did not do anything further with it. She did not interview anyone about that information, review the videotapes from [F.Q.'s] employer, or provide it to the county attorney's office. Detective Keating testified she did not interview anyone because 'the information [F.Q.] provided was not consistent with evidence that [she] had received from the medical staff in the investigation in this case.' Detective Keating was not a medical expert. Although Detective Keating said she had attended numerous seminars on child abuse, including shaken baby syndrome, she also said she had not received specific training on shaken baby syndrome.

"After these witnesses testified, the State told the district court that it could provide additional medical testimony if the court wanted to continue the hearing for that reason. Rodriguez' attorney similarly told the court that he thought they needed to have some sort of medical testimony regarding what type of injury can occur when a baby is thrown in the air. Nonetheless, the district court refused to continue the matter. After hearing argument from both counsel, the district judge found:

> '[T]his child had to have bore holes drilled in his head to relieve pressure
> from the brain swelling. These are not injuries that surfaced a month
> after any event. These are injuries that surfaced immediately. And there
> is no correlation, in my mind, from any incident that occurred with a co-
> worker at least a month prior to the hospitalization of this child and the

5

injuries. Therefore, you have failed to show good cause and your motion is denied.'

"The court sentenced Rodriguez to 34 months in prison, followed by 24 months of postrelease supervision." *Rodriguez I*, 2014 WL 1096553, at *1-3.

Rodriguez filed two postsentence motions to withdraw plea, which were denied. Rodriguez appealed, arguing the district court erred in denying his motions to withdraw plea. This court affirmed the district court's denial of Rodriguez' postsentence motions to withdraw plea. 2014 WL 1096553, at *12. But the majority held the district court abused its discretion in denying Rodriguez' presentence motion to withdraw plea. 2014 WL 1096553, at *7. The majority determined that the district court's factual findings that J.R.'s injuries could not have occurred as F.Q. described were not supported by any medical evidence, and the district court had based its decision on the judge's personal opinions. 2014 WL 1096553, at *5-7. The majority reversed the district court's decision to deny the presentence motion to withdraw plea and remanded for the district court to decide "whether the newly discovered evidence produced by Rodriguez is good cause to justify granting his motion to withdraw plea and to make findings of fact and conclusions of law supported by substantial competent evidence to justify it[s] decision." 2014 WL 1096553, at *12.

The district court received the mandate on April 30, 2014. There was no activity in the case except for attempts to collect restitution from Rodriguez. Almost four years later, on April 6, 2018, Rodriguez moved to dismiss, arguing that his "constitutional due process rights" had been violated because the district court did not conduct the remand hearing in a timely manner. For relief, Rodriguez asked that "his conviction be vacated and the case dismissed for the failure to follow the mandate."

6

The district court held a hearing on the motion to dismiss on May 8, 2018. Rodriguez pointed out that it had been over four years since the mandate was issued and nothing had happened. The prosecutor responded that Rodriguez' sentence had expired and there were questions about whether he was in custody on immigration issues. As a result, the prosecutor asserted it was not the State's burden to schedule the matter for a remand hearing. On May 22, 2018, the district court issued an order finding that "in this very unique factual circumstance, it was incumbent upon [Rodriguez] to approach the Court to seek implementation of the Court of Appeals' Mandate. As [Rodriguez] failed to take steps to implement the Mandate, [his] motion to dismiss is denied."

A hearing was then scheduled on the motion to withdraw plea, but it was continued several times. On May 3, 2019, Rodriguez, through counsel, filed another motion to withdraw plea. The motion submitted "additional arguments . . . in support of [Rodriguez'] request to withdraw his plea prior to sentencing." Rodriguez argued that good cause existed to withdraw his plea because there was not a sufficient factual basis to support his no-contest plea in the first place. Rodriguez asserted that the factual basis did not establish when J.R.'s injuries occurred, if Rodriguez inflicted the injuries, and whether the injuries resulted from intentional conduct.

The district court held an evidentiary hearing on Rodriguez' presentence motion to withdraw plea on August 23, 2019. To supplement F.Q.'s prior testimony, Rodriguez called Dr. Terra Frazier, a child abuse pediatrician from Children's Mercy Hospital. Frazier testified that based on J.R.'s medical records, there were indications of older and newer findings of abusive head trauma. Frazier testified that "[m]edically it cannot be determined when exactly the injury occurred" or if it occurred while J.R. was in Rodriguez' care. On cross-examination, Frazier agreed that J.R.'s injuries would have normally occurred a short time before the hospitalization. Frazier also testified that tossing a baby in the air would not be expected to cause the injuries seen in the child. She

7

also stated a fall from a couch or from a car seat would not explain the symptoms seen in the child. Frazier stated that routine care and handling of the child or an accident would not have caused the injuries. Instead, J.R.'s injuries were linked to shaking or impact. In closing argument, Rodriguez' counsel agreed that the medical records upon which Frazier based her testimony existed at the time of the original plea.

On September 18, 2019, the district court issued an order denying Rodriguez' presentence motion to withdraw plea. The district court found that Frazier's testimony supported the court's original decision to deny the motion. The district court made an additional finding that F.Q. was not a credible witness, and she was lying to help Rodriguez avoid responsibility for the crime. The district court found that Rodriguez failed to meet his burden of showing good cause to withdraw his plea. As for the separate motion filed on May 3, 2019, asserting an insufficient factual basis for the plea, the district court's order stated only that "[t]he Mandate did not vacate [Rodriguez'] sentence, therefore the other issues raised by [Rodriguez] premised upon this belief are moot and denied." Rodriguez timely appealed the district court's judgment.

DID THE DISTRICT COURT ERR IN DENYING RODRIGUEZ' MOTION TO DISMISS?

Rodriguez first claims the district court erred in denying his motion to dismiss. He argues that the district court should have granted his motion to dismiss because the district court did not hold the remand hearing until almost four years after the mandate instructed it to "'without delay'" execute the judgment of the Court of Appeals. Rodriguez asks this court to find that the State bears the burden to implement a mandate. He argues that the State should have filed a notice of hearing, contacted his appellate counsel, or tried to serve him at his last known address. Rodriguez asserts that if this court agrees with his argument, the only remedy is to vacate his conviction and dismiss the case.

8

The State argues that neither it nor the district court failed to follow the mandate because neither had any ability to contact Rodriguez to set a hearing. The State asserts it had "no duty to find [Rodriguez]" and he should have requested a hearing on the issue. The State also asserts that there is no requirement found in either statute or caselaw that requires a hearing on a mandate from a higher court be held in any specific time frame. In the alternative, the State argues that if there was a way for it to have set a hearing, any failure to do so was harmless because Rodriguez has failed to allege any prejudice.

Generally, the interpretation of an appellate court mandate and whether the district court complied with it are questions of law subject to unlimited review. *Gannon v. State*, 303 Kan. 682, 702, 368 P.3d 1024 (2016). Similarly, to the extent that resolution of this claim requires statutory interpretation, our review is unlimited. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

Both parties assert that this is an issue of first impression and that they could not find any relevant caselaw. But our research found one Kansas case addressing post-remand delay. In 2003, this court addressed a defendant's argument that his due process rights were violated when the district court delayed resentencing on remand. *State v. Prater*, 31 Kan. App. 2d 388, 65 P.3d 1048 (2003). Prater was convicted of aggravated arson and assault on a law enforcement officer. On appeal, this court reversed his aggravated arson conviction and remanded with orders to enter a new conviction for attempted aggravated arson. 31 Kan. App. 2d at 389. The district court received the mandate in February 2000 but did not resentence Prater until May 2001. During the delay, Prater was convicted of other charges which increased his criminal history score. Prater appealed arguing the delay in resentencing violated his due process rights.

The *Prater* court noted that Kansas caselaw has only examined the due process implications of pre-accusation delay, not post-appeal delay. The court explained that in

9

*State v. Royal*, 217 Kan. 197, 535 P.2d 413 (1975), the Kansas Supreme Court used the *Marion* test to examine pre-accusation delay, which asked if the delay prejudiced the accused and if the delay was used to gain a tactical advantage over the accused. *Prater*, 31 Kan. App. 2d at 391 (citing *United States v. Marion*, 404 U.S. 307, 92 S. Ct. 455, 30 L. Ed. 2d 468 [1971]). If the answer to both was yes, then the proper remedy was dismissal. The *Prater* court pointed to a New Mexico Court of Appeals case that applied the *Marion* test to determine whether a post-remand delay violated the appellant's due process rights. Finding the New Mexico case instructive, the court applied the *Marion* test to Prater's claim and found he demonstrated prejudice but failed to show that the State intentionally delayed the resentencing. *Prater*, 31 Kan. App. 2d at 392. Thus, the court denied his claim. 31 Kan. App. 2d at 392.

Our research reveals that other jurisdictions have classified claims of post-remand procedural delays as a due process challenge. And the cases usually apply the four constitutional speedy trial factors from *Barker v. Wingo*, 407 U.S. 514, 530-32, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972): the length of delay, the reason for the delay, the defendant's assertion of his or her right, and prejudice to the defendant, in deciding whether the defendant's due process rights have been violated. See, e.g., *United States v. Thomas*, 167 F.3d 299, 305 (6th Cir. 1999) (finding 29-month delay did not provide relief because defendant did not show prejudice); *State v. Nia*, 15 N.E.3d 892, 897-98 (Ohio Ct. App. 2014) (finding 68-month delay between remand and resentencing did not provide relief because defendant could not show prejudice); *Com. v. Fox*, 953 A.2d 808, 812-13 (Pa. Super. 2008) (finding one-year delay between remand and resentencing did not provide defendant relief because he failed to show prejudice); *United States v. Cain*, 734 Fed. Appx. 21, 25-26 (2d Cir. 2018) (unpublished opinion) (finding five-year delay between remand and resentencing did not provide defendant relief because he did not show prejudice).

We find it reasonable to adopt the *Barker* test in this jurisdiction for claims of post-remand delay, especially given that the mandate "command[s]" the lower court to execute judgment "without delay" and the lower court is duty-bound to follow the remand. See K.S.A. 20-108; K.S.A. 60-2106(c). In adopting this test, we observe that Rodriguez' brief compared the post-remand delay in his case to a speedy trial violation. The *Barker* test is also similar to the *Marion* test used by this court in *Prater*, which considered the nature of the delay and whether the delay caused prejudice.

We will now apply the four *Barker* factors to the post-remand delay in Rodriguez' case. First, as for the length of the delay—almost four years—we find this factor weighs in favor of granting Rodriguez relief. Second, as for the reason for the delay, the Kansas Supreme Court has stated:

> "'A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.'" *State v. Owens*, 310 Kan. 865, 875-76, 451 P.3d 467 (2019) (quoting *Barker*, 407 U.S. at 531).

Rodriguez is correct in asserting that the district court erred in finding the delay to be his fault. The district court incorrectly found the State and the court had no way to implement the mandate and that "it was incumbent upon [Rodriguez] to approach the Court to seek implementation of the . . . [m]andate." Instead, the district court is tasked with implementing the mandate, not the defendant. See *Cain*, 734 Fed. Appx. at 25 (The district court has the "responsibility . . . to act with appropriate dispatch to address cases on remand after an appeal. . . . And when the district court fails in this responsibility, the burden falls upon the government to remind the court of the unfinished business before

11

it."). The district court also incorrectly found that the State could not give notice of any hearing to Rodriguez. The State or the district court could have at least tried to send a notice of hearing to Rodriguez at his last known address and, if he did not appear, then the court could have proceeded accordingly.

Despite these erroneous findings, there is nothing in the record that would support finding the delay was a deliberate attempt by the State to delay the remand hearing from occurring. Instead, it seems to have been negligence of the district court and the State. Considering the record here, we find the second factor weighs in Rodriguez' favor.

As for the third *Barker* factor, Rodriguez did not assert his right to have the remand timely decided. He did not alert the district court that the matter remained pending or that he wanted it to be timely decided at any time during the almost four-year delay. He first alerted the district court of the pending matter in his motion to dismiss. Thus, the third factor weighs against him, although we find this factor less significant than the others. See, e.g., *Fox*, 953 A.2d at 813 (finding third factor weighed against defendant when he did not alert the court of delay until he moved to dismiss).

The fourth factor, prejudice to the defendant, is where Rodriguez' claim ultimately fails. In analyzing the prejudice factor, *Barker* identified three interests the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit possible impairment of the defense. *Barker*, 407 U.S. at 532; *Owens*, 310 Kan. at 880.

Rodriguez did not allege any prejudice before the district court, and he makes no claim of prejudice on appeal. The record shows that Rodriguez had completed his sentence before the post-remand delay even started. He makes no claim that the delay negatively impacted his rights in this case or any other case. He makes no claim that the

delay caused him any anxiety or concern. The delay did not impair his ability to prepare for the remand hearing, and he was able to call Frazier as a witness to support his motion to withdraw plea. The lack of prejudice to the defendant weighs heavily in applying the *Barker* analysis. Courts hold that the lack of prejudice in post-remand delay cases negates any claim of a violation of due process based on delay. See, e.g., *Cain*, 734 Fed. Appx. at 26 (finding lack of prejudice outweighed other factors); *Nia*, 15 N.E.3d at 898 (finding claim failed because defendant did not show prejudice); *Fox*, 953 A.2d at 813 (finding defendant could not show prejudice).

In sum, the district court's four-year delay in complying with the mandate is certainly not the standard courts should usually set. But Rodriguez has failed to establish a due process violation based on post-remand delay, mainly because he alleges no prejudice caused by the delay. Even if Rodriguez had shown a due process violation, a more appropriate remedy in this post-remand delay situation may have been to allow him to withdraw his plea instead of dismissing the case as he requested. In any event, we conclude the district court did not err in denying the motion to dismiss, although it did so for incorrect reasons. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015) (if a district court reaches the correct result, its decision will be upheld even though it relied on the wrong ground or assigned erroneous reasons for its decision).

DID THE DISTRICT COURT ERR IN DENYING RODRIGUEZ' MOTION TO WITHDRAW PLEA?

Rodriguez next claims the district court erred in denying his presentence motion to withdraw plea which was based on alleged newly discovered evidence. To recap, at the initial hearing on this motion, Rodriguez' girlfriend, F.Q., testified there were three prior incidents that could have caused J.R.'s brain injury, the main one being a co-worker tossing J.R. into the air about a month before the child's hospitalization. But F.Q. also briefly described an incident where J.R. had fallen out of his car seat, which had been placed on the couch, and his face hit the carpeted floor. She briefly described a third

incident where Rodriguez tripped and fell as he was carrying J.R. in his car seat. The district court rejected these explanations for J.R.'s brain injury, finding they could not have possibly caused the injury that led to the child's hospitalization.

In Rodriguez' first appeal, a majority of this court determined that the district court's factual findings that J.R.'s injuries could not have occurred as F.Q. described were not supported by any medical evidence, and the district court had based its decision on the judge's personal opinions. The majority reversed the district court's decision to deny the presentence motion to withdraw plea and remanded for the district court to decide "whether the newly discovered evidence produced by Rodriguez is good cause to justify granting his motion to withdraw plea and to make findings of fact and conclusions of law supported by substantial competent evidence to justify it[s] decision." *Rodriguez I*, 2014 WL 1096553, at *12.

At the remand hearing, Rodriguez called Frazier, a child abuse pediatrician, to further support his claim. Frazier testified that based on J.R.'s medical records, there were indications of older and newer findings of abusive head trauma. Frazier testified that "[m]edically it cannot be determined when exactly the injury occurred" or if it occurred while J.R. was in Rodriguez' care. On cross-examination, Frazier agreed that J.R.'s injuries would have normally occurred a short time before the hospitalization. She also testified that tossing a baby in the air would not be expected to cause the injuries seen in the child. She also stated that a fall from a couch or from a car seat would not explain the symptoms seen in the child. Frazier stated that the injuries were not accidental but were linked to shaking or impact. In closing argument, Rodriguez' counsel agreed the medical records upon which Frazier based her testimony existed at the time of the original plea.

After hearing the additional evidence, the district court again denied Rodriguez' presentence motion to withdraw plea. The district court found that Frazier's testimony

14

supported the court's original decision to deny the motion. The district court made an additional finding that F.Q. was not a credible witness, and she was lying to help Rodriguez avoid responsibility for the crime. The district court found that Rodriguez failed to meet his burden of showing good cause to withdraw his plea.

In this appeal, Rodriguez argues that the district court erred in denying his motion because "he was innocent and had a viable defense . . . supported by Dr. Frazier's testimony." Rodriguez argues that the district court's findings were not supported by the evidence. Rodriguez then discusses "negative finding[s]" and asserts that the district court here demonstrated its bias, passion, or prejudice when entering such findings. Then, under a heading entitled "Lack of Factual Basis," Rodriguez argues that the district court should have granted his 2019 motion to withdraw plea.

The State's brief does not address many of Rodriguez' arguments. Instead, the State simply asserts that Frazier's testimony added nothing to this case and concludes that Rodriguez failed to establish good cause to withdraw his plea.

We begin by stating the applicable law concerning a presentence motion to withdraw plea. "A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before the sentence is adjudged." K.S.A. 2020 Supp. 22-3210(d)(1). In determining whether a defendant has shown good cause, the "courts should consider three factors:  '(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.'" *State v. Barber*, 313 Kan. 55, Syl. ¶ 1, 482 P.3d 1113 (2021). But courts can consider other factors in determining whether good cause is shown. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

15

An appellate court reviews a district court's good-cause determination for an abuse of discretion. The person claiming an abuse of discretion has the burden to "establish the district court's decision was: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact." *Barber*, 313 Kan. at 58. The district court commits an error of fact when its findings are unsupported by substantial competent evidence. See *State v. Schaal*, 305 Kan. 445, 452, 383 P.3d 1284 (2016).

Rodriguez argues that he had a viable defense to the charge of abuse of a child supported by Frazier's testimony. Although this assertion may be true, Rodriguez fails to recognize that the case was remanded for the district court to decide whether the newly discovered evidence produced by Rodriguez was good cause to justify granting his presentence motion to withdraw plea. Although Frazier testified that it was medically impossible to determine exactly when J.R.'s injuries occurred, she agreed that the injuries would have normally occurred a short time before the hospitalization. Frazier could not rule out that the injuries may have occurred while J.R. was in Rodriguez' care. More importantly, she testified that it was unlikely that the injuries occurred accidently in any of the three prior incidents that F.Q. had described in her testimony at the first hearing. Thus, on this key point, the district court correctly found that Frazier's testimony supported the district court's original ruling.

Besides finding that Frazier's testimony failed to establish good cause for Rodriguez to withdraw his plea, the district court found that F.Q. was not a credible witness in her testimony at the first hearing. Frazier offers no legal reason why the district court could not make this credibility finding after the remand hearing even though the court had not made the finding after the first hearing. To the extent that Rodriguez argues the district court incorrectly found F.Q. to be lying, this court does not reweigh the evidence or assess witness credibility. See *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011) (applying this rule in the context of a motion to withdraw plea). And

16

contrary to Rodriguez' assertion, the district court explained why it found F.Q.'s testimony not to be credible. The district court noted that it had heard F.Q.'s testimony at the first hearing and determined that her testimony conflicted with prior statements she made and that she had a bias: her relationship to Rodriguez.

Rodriguez spends a portion of his brief discussing the negative findings standard, asserting that the district court disregarded undisputed evidence and demonstrated bias, passion, or prejudice. In support, Rodriguez points to three instances in the record that he claims shows the district court's bias: (1) the judge's reference in the order to his own knowledge and experience in the field of child abuse even though the appellate court had reversed the court's original ruling for this reason; (2) the judge's mention that Rodriguez did not move to dismiss until an effort was made to collect restitution; and (3) the judge's "surprising announcement that it found [F.Q.] was lying, without giving any reason why." Rodriguez again asserts that the undisputed medical evidence showed that it could not be determined when the injury occurred and, thus, he established he was innocent.

A negative finding is "any ruling which is merely adverse to the party with the burden of proof . . . and negative findings will not be disturbed on appeal absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice." *State v. Marx*, 289 Kan. 657, 661, 215 P.3d 601 (2009). Rodriguez points to no case in which the negative findings standard is applied to a motion to withdraw plea. But even assuming the negative findings standard could apply, Rodriguez fails to show that the district court disregarded undisputed evidence or based its decision on bias, passion, or prejudice. As for the judge's reference in the order to his own knowledge and experience in the field of child abuse, when the statement is read in context, the district court was simply explaining why it *previously* concluded the injuries could not have occurred as F.Q. testified. As for the collection proceeding comment, the district court made this comment in its ruling on the *motion to dismiss*. Rodriguez does

17

not show that the comment had any bearing on the court's ruling on the motion to withdraw plea. He also points to the judge's finding that F.Q. was lying as showing bias. But as discussed, this court does not reweigh credibility determinations and the district court explained why it found F.Q. not to be a credible witness.

In sum, the district court considered Frazier's testimony and found that it supported the court's original ruling that the three incidents F.Q. testified about could not have caused J.R.'s brain injury. This finding is supported by the record. The district court also found that F.Q. was not a credible witness, and we will not reassess witness credibility. Rodriguez fails to show that the district court abused its discretion in finding he did not establish good cause to withdraw his plea. Based on the evidence presented to the district court, we would reach this same conclusion even if we disregarded the district court's finding that F.Q. was not a credible witness.

As a final matter, under a separate subheading titled "Lack of Factual Basis," Rodriguez argues the district court erred in not granting his May 2019 motion to withdraw plea asserting there was no factual basis to support his plea. At the hearing on remand, Rodriguez claimed the 2019 motion should also be considered a presentence motion to withdraw plea because the Court of Appeals opinion established that the case procedurally was still prior to sentencing. The district court, in its ruling, found "the [m]andate did not vacate the defendant's sentence, therefore the other issues raised by the defendant premised upon this belief are moot and denied."

Rodriguez argues that his motion was not moot, and the district court's decision is thus an error of law and unreasonable. He also asserts the mandate rule did not prevent the district court from deciding his motion because the mandate rule is not jurisdictional, and the court could still decide issues not yet resolved. The State's brief did not respond to Rodriguez' arguments about the 2019 motion.

18

Rodriguez is correct that his motion was not moot. But this court can still affirm the district court's denial as correct for the wrong reason. If a district court reaches the correct result, its decision will be upheld even though it relied on the wrong ground or assigned erroneous reasons for its decision. See *Overman*, 301 Kan. at 712.

The district court appears to have denied the 2019 motion to withdraw plea, in part, because the motion raised a new issue that was beyond the scope of the mandate. The Kansas Supreme Court has discussed the mandate rule in two recent cases. In *State v. Soto*, 310 Kan. 242, 445 P.3d 1161 (2019), our Supreme Court addressed whether the mandate rule deprived the district court of subject matter jurisdiction to address Soto's motion for a new trial. After a remand for resentencing but before the district court held the resentencing hearing, Soto filed a motion for new trial based on an alleged *Brady* violation and newly discovered evidence. The district court denied Soto's motion, finding it untimely. On appeal, the State argued that the mandate rule prevented the district court from ruling on Soto's motion. Our Supreme Court disagreed, explaining the mandate rule does not deprive a district court of jurisdiction to address a new issue that surfaces after a mandate is issued. *Soto*, 310 Kan. at 252. Instead, the mandate rule is "merely designed to enforce the hierarchy of Kansas courts." 310 Kan. at 252. The court then issued a "synthesis" of the mandate rule:

> "The rule applies to prevent district court action on remand only when an issue has already been finally settled by earlier proceedings in a case, including issuance of the appellate mandate. If a final settlement of an issue has occurred, the district judge is not free to expand upon or revise that history. The mandate rule does not, however, prevent a district judge from doing whatever else is necessary to dispose of a case. This means the district judge must not only do as the mandate directs; he or she must also do what is needed to settle the other outstanding issues that must be decided to complete district court work on the case. Such issues may have been allocated for decision in the district court in the first place and then untouched by appellate proceedings. They may include issues arising from late-breaking facts. [Citations omitted.]" 310 Kan. at 256.

19

Our Supreme Court then concluded that Soto's motion fell into the late-breaking facts category and the mandate rule would not have prevented the district court from reaching the merits of Soto's motion. 310 Kan. at 256-57. Thus, the Supreme Court remanded the matter for further proceedings on Soto's motion. 310 Kan. at 261.

In *State v. Smith*, 312 Kan. 876, 482 P.3d 586 (2021), our Supreme Court again examined whether certain arguments were outside the scope of a prior remand. Smith's case had been remanded twice; the most recent remand instructed the district court to consider Smith's credibility regarding his argument that he could perfect an out-of-time appeal under the third *Ortiz* exception. At the hearing on remand, Smith advanced two new arguments not previously addressed, including that he satisfied the first *Ortiz* exception. At the hearing, the district court found Smith not to be credible and denied his new arguments as outside the scope of the remand.

On appeal, our Supreme Court again explained that the mandate rule reflects the hierarchy of the court system, and the rule did not set broad limits on jurisdiction. 312 Kan. at 884. The court then explained that the prior remand order was "not a general, open-ended mandate" and instead contained a specific order to determine whether Smith was credible and thus fulfilled the third *Ortiz* exception. 312 Kan. at 885-86. The court found that the district court properly refused to consider Smith's new arguments, holding:

> "The mandate rule does not constitute an inflexible jurisdictional barrier to a party's ability to raise a new issue following a remand, but where a remand order is stated in specific terms following deliberate litigation choices by the parties, . . . the parties are not free to endlessly expand on the issues the district court may consider in the absence of new (or newly discovered) facts." 312 Kan. at 886.

There is language in the *Soto* opinion supporting Rodriguez' argument that the mandate rule did not deprive the district court of subject matter jurisdiction to address the

new issue of whether Rodriguez could withdraw his plea based on an insufficient factual basis. That issue had not been raised before and had not been addressed by this court in Rodriguez' first appeal. See *Soto*, 310 Kan. at 256. But this is not a case, like *Soto*, where new evidence surfaced after the appellate court mandate was issued. In fact, Rodriguez' counsel agreed at the remand hearing that the medical records upon which Frazier based her testimony existed at the time of the original plea. Moreover, Rodriguez' assertion that there was an insufficient factual basis for the plea has nothing to do with new evidence.

We find the *Smith* opinion to be more on point to Rodriguez' case. Here, the remand order was specific: "The district court's decision to deny the presentence motion to withdraw plea is reversed and remanded with directions to make a decision regarding whether the newly discovered evidence produced by Rodriguez is good cause to justify granting his motion to withdraw plea and to make findings of fact and conclusions of law supported by substantial competent evidence to justify it[s] decision." *Rodriguez I*, 2014 WL 1096553, at *12. The newly discovered evidence produced by Rodriguez was F.Q.'s testimony about the prior incidents that could have caused J.R.'s brain injury.

In district court, Rodriguez made a deliberate tactical decision to argue that his case procedurally was prior to sentencing and that his 2019 motion submitted "additional arguments . . . in support of [his] request to withdraw his plea prior to sentencing." He argued that "good cause" existed to withdraw his plea because there was an insufficient factual basis to support the plea in the first place. Rodriguez' motion arguing an insufficient factual basis for the plea was merely an attempt to raise a completely new issue as part of his presentence motion to withdraw plea under the good-cause standard. This new issue was beyond the specific scope of the remand order, and the district court correctly refused to address the issue for that reason.

21

The district court also correctly found that the mandate from *Rodriguez I* did not vacate Rodriguez' sentence. Thus, any new motion filed by Rodriguez would need to be addressed as a postsentence motion to withdraw plea. See K.S.A. 2020 Supp. 22-3210(d)(2) ("To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."). But Rodriguez did not present his 2019 motion alleging an insufficient factual basis for the plea as a postsentence motion; instead, he insisted that the argument was part of his presentence motion to withdraw plea under the good-cause standard. We observe that Rodriquez could still file a postsentence motion to withdraw plea alleging an insufficient factual basis for the plea, and the district court would need to consider such a motion assuming it is filed within the time limitation or the time limitation is extended. See K.S.A. 2020 Supp. 22-3210(e). But that issue is not before us now, and we offer no opinion on the merits of such a motion.

Affirmed.